IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRIDGE, STRUCTURAL AND REINFORCING )
IRON WORKERS, LOCAL UNION NO. 1, )
AFL-CIO, )
)
           Plaintiff, )
)
v. ) No. 03 C 4207
)
FIDELITY AND DEPOSIT COMPANY OF )
MARYLAND, )
)
           Defendant. )

## MEMORANDUM OPINION AND ORDER

Bridge, Structural and Reinforcing Iron Workers, Local Union No. 1, AFL-CIO ("Union") has brought this action to recover on a Labor Organization Bond ("Bond") that it had entered into with Fidelity and Deposit Company of Maryland ("Fidelity"). Union claims that certain dishonest acts committed by its one-time Financial Secretary-Treasurer Michael Hebda ("Hebda") led to losses that are subject to indemnification under the terms of the Bond. This Court has jurisdiction based on the complete diversity of citizenship that exists between each of Union's members and Fidelity.

Both parties contend that at least part--and Fidelity urges that all--of the dispute between them can be resolved under the familiar Fed. R. Civ. P. ("Rule") 56 standards for summary judgment. In response to those conflicting contentions, this Court established a briefing schedule for simultaneous submissions of cross-motions for summary judgment and for

responses to those motions. With all of the required submissions in hand, the cross-motions are now ripe for disposition.

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to the nonmovant and draw all reasonable inferences in its favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment a nonmovant "must produce more than a scintilla of evidence to support his position" that a genuine issue of material fact exists (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate a genuine issue of triable fact" (id.). Ultimately summary judgment is appropriate only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

Where as here parties have cross-moved for summary judgment, those same principles apply (Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc., 293 F.3d 402, 404 (7th Cir. 2002)). In that situation summary judgment is proper in favor of either movant if the record, when viewed from the nonmovant's perspective, demonstrates that there is no genuine issue of material fact and that the movant would be entitled to a judgment as a matter of law (id.).

In this instance it makes sense to begin with Fidelity's summary judgment claim. Fidelity argues that this action is precluded by a contractual time limitation contained in the Bond. If it prevails on that score, this action fails at the very threshold and no need exists to consider the substantive claims raised in Union's motion and addressed in Fidelity's response.

Relevant Facts

Although the parties have presented extensive and conflicting versions of events, the facts that are truly relevant to Fidelity's claim are fairly limited and undisputed.[1] Fidelity and Union entered into the Bond on June 30, 1999 to provide Union with indemnification "against loss sustained through any fraudulent or dishonest acts committed by any of the officers and/or employee of the insured, acting alone or in collusion with others" (U. St. ¶9). Schedules included within the Bond established a baseline indemnification figure of $100,000, with excess indemnity of $400,000 provided for each of the positions of Union's President, Office Secretary and Financial Secretary-Treasurer (U. St. ¶¶11-12).

Between December 1998 and March 2000 Union (through Hebda,

---

[1] Where factual disputes do exist, the version presented here tracks the earlier-stated Rule 56 standards--that is, it adopts a stance most favorable to Union. To that end this opinion will rely on the factual statements submitted by the parties in accordance with LR 56.1, citing those statements as "U. St. --" and "F. St. --."

3

its Financial Secretary-Treasurer at the time) invested a total of $900,000 with Capital Consultants, LLC (F. St. ¶26). Union claims that both during and after that period Hebda deliberately misled other Union officers as to the status and security of the investment (U. St. ¶¶32-44). As a result of Hebda's alleged dishonesty, Union suffered a loss for which it now seeks indemnification.

Although Fidelity disagrees with Union's substantive claims under the Bond, its stated ground for summary judgment is more fundamental. In Fidelity's view this action is foreclosed altogether by the limitation provision in the Bond's Conditions and Stipulations Section 5 ("Section 5")(F. St. ¶9, with emphasis added):

> Upon knowledge or discovery of loss under this bond, the Insured [Union] shall: (a) give notice thereof as soon as practicable to the Underwriter [Fidelity] and (b) file detailed proof of loss, duly sworn to, with the Underwriter within four months <u>after the discovery of the loss</u>.
>
> \*   \*   \*
>
> <u>No action shall lie against the Underwriter</u> unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this bond, nor until ninety days after the required proofs of loss have been filed with the Underwriter, nor at all <u>unless commenced within one year from the date when the Insured discovers the loss</u>.

On April 2, 2001 Union filed a "Proof of Loss Under Fidelity Bond," claiming a $997,542 loss stemming from a "[f]ailed investment in Capital Consultants, LLC" and citing Hebda's

4

dishonest acts as contributing to that loss (U. Ex. K). But Union did not file this action until June 9, 2003--a full two years and 68 days after it had submitted the Proof of Loss (F. St. ¶15). According to Fidelity, that delay has taken Union well beyond the contractual bar date.

### Union's "Discovery of the Loss"

There is no question that parties to a bond in Illinois can contractually limit the time period within which a claim to recover on the bond may be brought (1000 Condominium Ass'n v. Carrier Corp., 180 Ill.App.3d 467, 470, 535 N.E.2d 1144, 1147 (1st Dist. 1989)). And because the interpretation of a bond's provisions is a question of law to be determined by the court (Alpine State Bank v. Ohio Cas. Ins. Co., 941 F.2d 554, 559 (7th Cir. 1991)), summary judgment in Fidelity's favor is fully warranted if Union's June 9, 2003 filing was indeed too late to comply with the contractual limitation.

Union does not (and of course cannot) quarrel with the existence of the documents and dates on which Fidelity relies: It acknowledges that it submitted the Proof of Loss on April 2, 2001 and that it filed its Complaint here on June 9, 2003.[2] It

---

[2] Union does seek to dispute Fidelity's description of the Proof of Loss "insofar as they omit the fact that [the Proof of Loss] was prepared by counsel for Union, Local 1 on behalf of Union, Local 1" (U. St. ¶10). It is unclear what Union hopes to accomplish by that assertion--regardless of who prepared the document, there is no dispute that it was signed by Union's President, duly sworn and submitted to Fidelity. Fidelity cannot

5

argues instead that the June 9, 2003 filing does not run afoul of the contractual provision because its earlier Proof of Loss did not reflect a "discovery of the loss." Rather Union urges that such discovery did not occur until December 2002 (U. St. ¶20)(citations omitted):

> Iron Workers, Local 1's discovery of loss as a result of Hebda's dishonest and fraudulent acts could not have occurred until December 5, 2002 when Judge King, in the receivership action, ordered a pro rata distribution to all investors in Capital Consultants collateralized note program. The 997,542 figure cited in Paragraph 19, and apparently referenced by Defendant [Union] in Paragraph 20, of its Local Rule 56.1 Statement of Facts, from the "Five and a Half Month Compilation" compiled by Iron Workers, Local 1's Certified Public Accountant, Thomas Havey, and merely indicates that the Union reduced that amount as a loss for the period ending December 15, 2000, prepared pursuant to the obligations of Article XXVI, Section 16, of the Iron Worker International Constitution.

Just what does the Bond mean by "discovery of the loss"? Both sides have sought to address that question by citing other Illinois cases interpreting similar (but not identical) contractual limitations provisions. But here there is no need to turn to such external sources for interpretation of the contractual terms. Instead one has only to look at Union's actions to establish its own understanding of those terms--at least, that is, before Union perceived that it would serve its interest to claim otherwise in this lawsuit.

It will be recalled that Section 5 requires Union, as the

---

disavow either the document or its legal effect.

6

Insured, to "file detailed proof of loss, duly sworn to, with the Underwriter within four months after the <u>discovery of the loss</u>" (emphasis added). Union's April 2001 filing was, as it expressly stated, just such a proof of loss, and that alone was an acknowledgment that <u>the loss had already been discovered</u>—indeed, within the preceding four months. And that unambiguous representation is fortified (as if fortification were needed) by the manner in which Union completed other portions of the Proof of Loss form:

- Union listed "12/2000" as the date in its "Detailed Statement of Claim."

- In its "Statement of Manner in Which Loss Sustained," Union said that Hebda admitted his dishonest acts on November 29, 2000 and that "[a]s of December 15, 2000, Local 1 accountants recorded a loss of $997,542 in Local 1 funds invested in Capital Consultants, LLC,...."

All of that confirms Union's own understanding that the $997,542 loss was "discovered" in December 2000, so that its submission of a detailed and duly sworn Proof of Loss on April 2, 2001 was intended to comply with the first timeliness requirement of Section 5.

Nothing in Union's earlier-quoted U.St. ¶20 alters that conclusion. To begin with, that response is misleading in a key respect: Although the $997,542 figure does appear in the Compilation by Union's CPA to which Union refers, the Compilation is not the source of Fidelity's assertion. Instead Fidelity

7

clearly (and correctly) cites to Union's Proof of Loss, a filing that Union conveniently neglects to mention in that portion of its response.

That omission highlights the problem with the entirety of Union's present position. If no Proof of Loss had been filed in 2001, and if Union had rather tendered such a filing within four months after the date it now claims as the operative event (the December 5, 2002 order in the Capital Consultants receivership action)--that is, if Union actually stood in the position that its response suggests--it might perhaps be in a position to claim that it first discovered the loss at that date in 2002.[3]

But any such contention is foreclosed by Union's unequivocal claim <u>under the terms of the Bond</u> that it had discovered the loss almost two years earlier. Union cannot legitimately take one position as to "discovery of the loss" when it seeks to establish its entitlement to indemnification, then urge upon this Court an entirely different conception of that term when it seeks to define the period of time prescribed by the Bond for commencing an action to obtain that indemnification. In that respect Union has placed itself in a bind akin to that created by the "mend the hold" doctrine, which more typically operates to constrain insurers rather than insureds (see, e.g., <u>Harbor Ins. Co. v.</u>

---

[3] No view is expressed, or needs to be expressed, here as to the persuasiveness or lack of persuasiveness of that hypothetical stance.

Continental Bank Corp., 922 F.2d 357, 362-64 (7th Cir. 1990)).

In a final attempt to escape the inexorable conclusion that the loss had been discovered by the time the Proof of Loss was filed in 2001, Union now seeks to assert that the loss at issue here could not have been discovered in 2001 because the amount has been affected by the outcome of the receivership action (U. St. ¶12). If that is somehow intended to suggest that this case involves a different loss altogether, it is scotched by Union's repeated references throughout its current filings to the earlier Proof of Loss as having put Fidelity on notice of the loss that Union is now seeking to recover (U. St. 7).[4] And if instead the more likely premise for Union's contention is a theory that "discovery of the loss" for reporting purposes does not occur until the precise amount of loss is fixed, it is of course dead wrong.

On that last point, it is clear that "discovery of the loss" must be read as referring to knowledge of the <u>fact</u> that a loss has been incurred, rather than somehow being deferred until such a known loss is definitively <u>quantified</u>. After all, <u>Kerr v.</u>

---

[4] Union now attempts to characterize its Proof of Loss as a document designed to notify Fidelity of the "potential loss of the Union funds invested in Capital Consultants." But the document itself, while acknowledging that the investment is in receivership, contains no such conditional language. Instead, the document cites a loss of $997,542 stemming from a "failed investment" and states expressly that "[a]s of December 15, 2000, Local 1 accountants recorded a loss of $997,542."

9

<u>Illinois Cent. R.R. Co.</u>, 283 Ill.App.3d 574, 581-82, 670 N.E.2d 759, 765 (1st Dist. 1996)(citations omitted) explains the very purpose of an early notification-of-loss requirement (which is found in every indemnification insurance policy):

> Notice provisions in insurance policies serve the important function of allowing the insurer the opportunity to make a timely and thorough investigation of the insured's claim....Thus, notice provisions are valid prerequisites to coverage and not mere technical requirements which the insured is free to overlook or ignore with impunity.

Indeed, in this instance Union's impermissible reading would not pull the trigger as to "discovery of the loss" even now, for its Mem. 8 says that the precise amount of its loss is not yet known:

> Iron Workers, Local 1 has received two payments in respective amounts of $240,697.00 and $209,934.00 from the pro-rata distribution from the Capital Consultants receivership. Iron Workers, Local 1 has been advised that, even upon additional distributions following the appeal of the receivership Court's order, it will not recover the full amount of its investment in Capital Consultants.

## Conclusion

In sum, Union cannot avoid the conclusion, based on the controlling and undisputed facts, that it had already "discovered the loss" that it is now seeking to recover from Fidelity before April 2, 2001. That being so, the Bond's contractual limitations provision bars this suit, filed more than two years after the date of discovery.

Because there is no genuine issue of material (that is, outcome-determinative) fact, and because Fidelity is entitled to

10

a judgment as a matter of law, its Rule 56 motion for summary judgment is hereby granted and this action is dismissed. This ruling obviates the need to explore the merits of either Union's motion for partial summary judgment (which is of course denied by reason of the action's dismissal) or Fidelity's motion to strike portions of the testimony on which Union relies (a motion that is rendered moot).

_____
Milton I. Shadur
Senior United States District Judge

Date: March 31, 2005